[Civ. No. 5510.   Second Appellate District, Division Two.—March 4, 1927.]

NORTH ELK OIL COMPANY et al., Petitioners, v. IN-DUSTRIAL ACCIDENT COMMISSION and E. E. WALTERS, Respondents.

[1] WORKMEN'S COMPENSATION ACT — INJURIES ARISING OUT OF EM-PLOYMENT—FINDINGS—EVIDENCE.—In this proceeding in *certiorari* to review an order of the Industrial Accident Commission award-ing compensation to an injured employee, the evidence was suffi-cient to sustain the finding that the injuries arose out of the employment.

[2] ID.—WITNESSES—TESTIMONY IN OPPOSITION TO EXPERTS—OPINION. In such proceeding, the employee, although a lay witness, could testify in opposition to expert testimony that he never had a venereal disease claimed to be the cause of his injuries, where his testimony was as to a matter of fact known to himself and not as a matter of opinion.

[3] EVIDENCE—WITNESSES—FACT—OPINION.—A lay witness may tes-tify as to whether he had a particular disease, as a matter of fact known to himself and not as a matter of opinion.

[4] WORKMEN'S COMPENSATION ACT—AWARD—CONFLICTING EVIDENCE—CERTIORARI.—An award of the Industrial Accident Commission will not be disturbed by the reviewing court where the evidence is conflicting.

---

(1) Workmen's Compensation Acts, **C. J.**, p. 115, n. 37.   (2) 22 **C. J.**, p. 618, n. 21.   (4) Workmen's Compensation Acts, **C. J.**, p. 123, n. 41.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

Verge, Cooney & Kearney for Petitioners.

G. C. Faulkner for Respondents.

---

2.   See 10 Cal. Jur. 955.
3.   See 10 Cal. Jur. 996; 11 R. C. L. 607.
4.   See 27 Cal. Jur. 579; 28 R. C. L. 828.

WORKS, P. J.—E. E. Walters was employed by North Elk Oil Company. In the course of his employment. he and a fellow employee were engaged in some operations which required the handling of a certain sand line, as it is termed. This line was a wire rope, and, at the end and some distance from and below where Walters and his companion were working, it was wound round the drum of a donkey-engine. At a time when the engine, temporarily, was not in operation, the two men had the sand line in their hands. In some manner a loop or kink in the line caught one of the hands of Walters' companion, and while the two men were attempting, by pulling on the line, to disengage the member, the engine was started and began to draw in the rope and wind it on the drum. Fearing serious injury to the imprisoned hand, Walters and his companion pulled and strained at the rope, at the same time calling to the operator of the engine to stop it. This was finally done, but not until Walters, as a result of his tugging at the line, according to testimony before the Industrial Accident Commission, felt a severe pain in his right groin. The nature of the injuries claimed to have been suffered by him will be described in detail below. He made application for compensation because of them and an award was made in his favor. Petitioners asked for a rehearing before the Industrial Accident Commission, which was denied. They then applied to this court for the writ of review and a writ issued.

[1] There was ample evidence before the Commission to justify the finding that after the occurrences above related Walters was found to be afflicted with a right orchitis and epididymitis, that is, these afflictions were found to be present on the right side of the applicant. Orchitis is an inflammation of a testicle. Epididymitis is an inflammation of the epididymis, an oblong organ attached to the testicle.

[2] Two experts gave evidence which tended to show that the injuries of Walters did not arise out of his employment. Dr. R. W. Harbaugh made a written statement which contained the following: "In my opinion the strain and exertion were a minor factor in reactivating an old quiescent infection. I believe then that we are dealing with a case in which pre-existing disease is the primary factor, the strain incidental to his [Walters'] occupation acting as an exacer-

bating factor." The record contains several written statements by Dr. Gustav F. Boehme. The first of these is dated February 15, 1926, the occurrence out of which Walters' application arose having taken place on December 28, 1925. The statement is based upon an examination of the applicant on February 13th, and reads, in part: "At the present time this man has a receding epididymitis. This condition in my opinion is due to infection of some sort and is not attributable to injury. You will notice that this man sustained no blow or injury in this region, and therefore I feel that all injury can be excluded as a causative factor. . . . There is no disability due to injury. There will be no permanent disability." In a second statement, dated April 17, 1926, the same expert says: "This condition, as I see it, at this time and as I saw it previously, leaves no question of doubt in my mind but that we are dealing with an infectious process involving the epididymi. . . . This case, in my opinion, presents nothing which was occasioned by injury or industry, and I do not feel that any disability is to be attributed to any occupational cause."

It is contended that these opinions relate to matters which are exclusively for experts, and that, therefore, certain lay evidence which is to be found in the record cannot be considered as affecting the opinions of the experts from whose statements we have quoted, and, legally, could not have been considered by respondent Commission as a foundation for the award it made. Before we come to that particular question, however, several others are to be examined. In the first place, the opinion of one of the two experts was not given without qualification. The portion of the statement of Dr. Harbaugh which is above set forth was preceded immediately by this remark: "Medical opinion is divided upon the subject as to just what relationship strain and exertion have on this type of case." Again, a third expert, Dr. A. B. Edgerton, gave his views upon the question as to the cause which produced the condition of Walters. He testified before the Commission: "Q. Have you known of those conditions developing from strain? A. No, I never have known of a case developing from strain. Q. Have you any opinion whether or not such a strain as he described, or a very severe strain, could cause it, or precipitate it? A. It is very hard to say. I never have seen a case in my experi-

ence that has happened although it might happen.   Q. You say it might happen?   A. It might.''

Further, Dr. Boehme, in his statement dated April 17th, gave the reasons for the conclusion reached by him. They were: ''1. That the man in no way claims any local injury to the scrotum.   2. The fact that the epididymis alone is involved and that there is involvement on both sides.   It is usual for injuries in this region to involve not alone the epididymis but also the testicle and the involvement of the epididymis alone, especially bilaterally, leads to the conclusion that there must have been some infection in the past. You will note that the patient himself also admits that there was some discharge present a few days before admission to the hospital.   3. The fact that his condition did not come on until a considerable time after the alleged accident, and that he worked for the rest of the day following the alleged injury, and two days thereafter, and then was laid off, not because of injury but because there was no work.   4. The fact that it is practically anatomically impossible to produce an injury in this region without direct violence on the part. Had there been any torsion or any other serious injury this man would have had immediate pain, and would within a very short period of time thereafter have been forced to quit.   This was not the fact in this case.''   The first reason assigned was a proper subject of consideration by the expert, for it was in strict accordance with the evidence, that is, if by ''local injury'' he intended to refer to a traumatic injury, as he apparently did.   Several things are to be mentioned in connection with the second reason.   Take first the statement, ''the epididymis alone is involved.''   Dr. Boehme never examined Walters until February 13th, a month and a half after the occurrences from which his claim for compensation arises.   Moreover, the expert's statement as to the involvement of the epididymis alone is in the present tense, was made on April 17th, and is given as a reason for an opinion expressed on the same day.   There was evidence from which a finding could have been made that the reason given was not a proper subject for the consideration of the expert.   Walters testified that immediately after the accident and before he left the spot at which it occurred his testicle was painful: ''It was painful then, for a while I couldn't hardly do anything.''   He said he first saw a

doctor a week or ten days after he was hurt, and that in the interim his testicle had swollen so that a suspensory which he had bought would not contain it. When he went to the physician the latter "noticed the condition I was in, my right testicle was as long as your finger, and it had gotten so it was about, pretty near, I should say between five and six inches long and swollen up and very painful." Some time after he was seen by this physician, and after he had consulted another, he went to a hospital, where he remained in bed for a week. At the end of his sojourn there, as he testified, "the swelling left me, practically all of it, and they called me up and asked me if I was able to travel, to go to Los Angeles," his injuries having been incurred at Taft. This trip to Los Angeles was taken, and seems to have been requested by petitioner Zurich Company. Dr. Boehme examined Walters in his office in that city on February 13, 1926, and, on behalf of the petitioner last named. In stating the second reason for his conclusions Dr. Boehme refers to an involvement of the epididymi on both sides, and gives this circumstance, together with the fact that the epididymi alone were affected, as a ground for concluding that "there must have been some infection in the past." As we have already pointed out, there was evidence that the epididymi were not alone affected, but also, at first, the right testicle. Moreover, while the expert states that a bilateral affection of the epididymi is characteristic of gonorrheal infection—for the context of his several statements shows that he referred to that species of infection—he does not say that such a condition might not result from a unilateral strain, if it be granted that orchitis or epididymitis may be superinduced at all by a nontraumatic force. Again, in the statement of his second reason the expert refers to the fact that "there was some discharge present a few days before admission to the hospital." This, however, was some time after the accident and he does not say that a discharge might not have resulted, without previous infection, and solely from the condition in which the right testicle was at that time, as shown by the testimony of Walters, with which condition the expert was apparently unfamiliar. The third reason given does violence to much of the evidence in the record. There was abundant testimony that the "condition" came on immediately after the accident. Also, while

it is true that the particular work of the crew with which Walters was employed was continued for but three days, the undisputed evidence is that he did not work during that period. Immediately following the accident he was taken to a tent, where, as he testified, he lay down for the entire three days, except that, as further testified by him, he "watched the pot, firing the boilers." He said, further: "I didn't do any work, there wasn't any work to it." The head man on the job corroborated Walters' testimony as to his lying in the tent, for at least a part of the time. He testified, further: "There is no work to firing the boiler with the exception of a little gauge valve." This statement undoubtedly means that the boiler was "fired" by means of oil, the flow being regulated by the mere turning of a valve. The fourth reason given by the expert is likewise in defiance of a portion of the evidence. There was abundant testimony that Walters suffered extreme pain at the moment of the accident and continuously for a long time thereafter, and that he was immediately "forced to quit." The conclusions of Dr. Boehme, based, as they were, upon an improper hypothetical case, were practically of no value.

[3] Walters testified that he had never been ill in his life. He said, specifically, that he had never had a venereal disease of any kind. This is the lay evidence to which petitioners refer, as stated above, as not being proper for consideration in opposition to the testimony of the experts. The testimony given by Walters was not upon a subject which is for experts alone (22 C. J. 618). Without the citation of authority, it would seem that a witness may testify whether he has had a particular disease as a matter of fact known to himself, and not as a matter of opinion.

[4] We can see nothing in this proceeding but a conflict of evidence. Under such circumstances, of course, the award made by the respondent Commission cannot be disturbed.

Award affirmed.

Craig, J., and Thompson, J., concurred.