[Civ. No. 7956. First Appellate District, Division One.—January 21, 1932.]

NICK THOREAU, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, LINDGREN and SWINNERTON et al., Respondents.

William Sea, Jr., and Joseph E. Isaacs for Petitioner.

A. I. Townsend for Respondents.

KNIGHT, J.—This is a proceeding to review a decision of the Industrial Accident Commission denying petitioner's application for compensation upon the ground that the disability from which he was suffering was not caused by an industrial injury.

The evidence taken before the Commission shows without contradiction that petitioner, a man past sixty years of age, while working for a contracting firm as laborer, was struck in the pit of the stomach by the end of a large timber which petitioner and nine other workmen were attempting to carry. He was instantly disabled by the blow, and admittedly since then, besides suffering intense pain in the regions of the stomach, he has been unable to retain any food, and consequently totally incapacitated from performing any kind of work. The evidence further shows, however, that within a few hours after the accident occurred he was placed under the care of the insurance carrier's doctor, who later sent him to a specialist for a complete clinical review, and that about a month after the accident happened they sent written reports to the insurance company to the effect that petitioner's disability was due entirely to a pyloric stenosis, which is described as being a narrowing or contracting of the distal or duodenal aperture of the stomach, resulting from a pre-existing ulcerous condition; and they further stated that in their opinions such condition was neither exacerbated or aggravated by any blow which he may have received in the stomach; whereupon the insurance company denied all liability in the matter. Neither of said doctors testified at any of the hearings which took place before the Commission, but the two written reports made by them to the insurance company were introduced in evidence by said company, and it is now contended on behalf of the Commission that the opinions of said doctors, as expressed in said reports, are legally sufficient to raise a conflict upon the determinative issue in the case, and therefore sufficient to support its decision denying petitioner any compensation.

In construing and giving effect to the provisions of the Workmen's Compensation Act it has been uniformly held by the Commission and the reviewing courts that an employer takes the employee subject to his condition when

he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience. In such cases full compensation for the entire disability suffered is recoverable although the physical condition of the employee undoubtedly contributed to and increased the disability caused by the injury or prolonged and interfered with healing and recovery, without the condition or disease itself being aggravated. (27 Cal. Jur. 408.) In other words, it is well established that acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration or aggravation. (*G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17]; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712].) However, where a continued disability is due to a pre-existing active disease which is aggravated by the injury, subdivision 4 of section 3 of said act (as amended by Stats. 1919, p. 910, sec. 1) limits the allowance of compensation to such portion of the disability due to the aggravation as may be reasonably attributed to the injury.

In the present case, in addition to the letter reports above mentioned, there is ample evidence to support the conclusion that at the time of the accident petitioner was afflicted with an ulcerous condition of the stomach, which sooner or later, in the absence of medical treatment, would have brought about his disability; but it also shows without any contradiction whatever that he was unaware of such condition and that up to the very time he received the blow in the stomach he was earning his living by performing the hardest kind of manual labor; and admittedly since then he has been in an exceedingly distressful condition. He is unable to retain any food, except certain liquids; after attempting to eat he is seized with spells of dizziness and headaches, and vomits for a half hour or more at a time; and during these spells he suffers intense pains and is unable to straighten up. In view of these positive, uncontroverted facts showing beyond question that petitioner's acute condition was brought about directly by the blow he received in the stomach, it cannot be successfully maintained that the opinions advanced by the insur-

ance company's doctors in their letter reports to the company to the effect that such pre-existing condition was in no manner exacerbated or aggravated by an industrial injury are sufficient to constitute a conflict on that issue.

An analogous situation arose in the case of *Singer* v. *Industrial Acc. Com.*, 105 Cal. App. 374 [287 Pac. 567]. There a woodsman claimed to have sustained a hernia during the course of his employment; but the employer's doctor to whom he reported for treatment about a week afterward took the view that the ailment was not of recent origin and refused to administer the necessary medical and surgical treatment unless the employee paid him a fee therefor. In determining the employee's application for an adjustment of his claim for compensation the Commission held in confirmation of the testimony given by the doctor that the ailment was neither caused nor exacerbated by an injury sustained in the course of his employment; and consequently the application was denied. The decision was reviewed on *certiorari* and set aside, the court holding in effect that for the reasons there stated, as against the positive, uncontradicted testimony given by the employee, the opinion expressed by the doctor did not raise a substantial conflict. A petition for hearing before the Supreme Court was subsequently denied. Later a similar ruling was applied in the case of *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142, 143]. In that case a young woman employed as a clerk in a store fell from a stool while waiting on a customer. Several days later she was seized with acute pains in the abdominal regions and shortly afterward was taken to the hospital where an operation was performed, and it was ascertained that she was suffering from a complication having its origin in an ovarian tumor, with which she had been afflicted for some time prior to the accident. In the proceeding she instituted before the Commission for an adjustment of her claim the determinative question presented was whether or not the fall from the stool brought about the acute condition. Medical opinions were introduced on both sides, and at the end of the hearing the Commission denied her application. On *certiorari* it was contended in support of the Commission's adverse decision, as here, that the opinions advanced by certain doctors to the effect that the fall did not exacerbate the pre-existing con-

dition raised a conflict in the evidence and that therefore the Commission's finding on that issue was conclusive. The court held otherwise and annulled the decision, saying in part: "Those (doctors) who observed petitioner's symptoms within a short time after the fall were of the view that the fall was the cause. Those who held to the contrary view did not see her until after the operation, and based their opinions largely on the premise that the preoperative symptoms did not appear sufficiently soon to indicate a connection. . . . The case does not present a true conflict of evidence. The opinions of the doctors who were of the view that the fall did not produce the twisting of the pedicle, as stated in their letter reports, were based on the theory that severe symptoms did not appear until some time after the fall. The evidence, on the other hand, shows that petitioner suffered severe abdominal pains almost immediately thereafter, although her condition naturally became aggravated as time elapsed. Said opinions being based on a state of facts not shown by the record to exist, are not in conflict with the opinions of the doctors whose statements were based on the facts actually shown to exist by the evidence of petitioner and the doctors who attended her."

In the present case the report of the specialist employed by the insurance company shows that it was based upon a single examination made more than a month after the injury happened, during most of which time petitioner had been under treatment of the insurance company's doctor in a hospital. Naturally, therefore, as in the Winthrop case, because of lapse of time evidences of the effects of the industrial injury had disappeared. And an analysis of the report of the doctor regularly employed by the insurance company shows that his opinion that petitioner's preexisting ailment was not exacerbated by an industrial injury was based entirely upon his theory that no such injury ever occurred; that petitioner had been ill from the effects of said pre-existing condition and had performed no manual labor whatever for some time prior to the asserted injury; whereas the uncontroverted testimony taken later before the Commission shows that these were entirely false assumptions. As said in the case of *North Elk Oil Co.* v. *Industrial Acc. Com.*, 81 Cal. App. 582 [254 Pac. 582], the conclusion of an expert based upon an improper hypothetical case is

of no practical value. Moreover, said report shows that, despite the doctor's determination from the beginning to deny petitioner any compensation whatever and after having so recommended, he was not satisfied with the sufficiency of the medical findings then at hand to sustain such denial, and that therefore he sought to persuade petitioner to continue under the treatment of said specialist at a university hospital with which the specialist was connected, for the purpose, among others, of securing additional facts to support such rejection. In this regard, after informing the insurance company that the specialist had agreed with him that the claim should be rejected, he stated that fortunately the specialist was a professor of medicine at the university and that inasmuch as this was "a very interesting clinical case" the specialist would try to prevail upon the patient to enter the hospital as a charity case; and continuing, he stated: "The value of this will be two-fold—first, the patient will be tided over his economic stress which will result from a discontinuance of compensation indemnity, and secondly, . . . (the specialist) will be in close touch with the case, and be in a position to obtain further findings which will substantiate and strengthen the rejection of the case which we are now recommending."

It is of course conceded that reviewing courts may not invade the field of the fact-finding body, and that under well-settled rules where a conflict of evidence exists the findings of the triers of the facts are conclusive; but it is equally well settled that the application of the foregoing doctrine is limited to cases where the conflict is substantial and real, and not fanciful or fictitious (*Burns* v. *Faget Engineering Co.*, 53 Cal. App. 762 [200 Pac. 818]), nor a mere pretense (*Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377]) ; and in this regard it has been held that mere conclusions will not serve to meet the definition of substantial or any evidence as against positive, direct evidence of a fact. (*Barton* v. *McDermott,* 108 Cal. App. 372 [291 Pac. 591].)

Additional medical reports made directly to the Commission by other doctors were received in evidence also before the Commission, and while it appears therefrom that petitioner doubtless had been afflicted with a pre-existing ulcerous stomach condition for some time prior to the date

on which he was struck by the timber, there is nothing in any of these additional reports which is in substantial conflict with the fact positively established by uncontradicted evidence that the blow from the timber did instantly disable petitioner and bring on his acute, critical condition. The doctor appointed by the Commission reported merely that from the evidence before him he did not see how the lesion of the stomach could have been "produced" by the injury; but he stated that aside from this petitioner complained of pains in the lower chest which were "not satisfactorily accounted for by the gastric lesion"; that no physical findings were discovered to account for them and that while in his opinion the disorders were "in the main" not explained by the injury he felt that he could give a more conclusive opinion by a longer period of study and observation. The X-ray specialist reported that his services were limited to an examination of the stomach and duodenum, which disclosed the existence of pyloric stenosis; but he advised that films be made of the lower chest to ascertain whether there had been any injury to the thorax; and evidently this was not done. And the doctor employed by petitioner stated without qualification that petitioner's condition was "due to a traumatic condition brought about by the blow by the timber"; and that although petitioner might have had a previous ulcerous condition of the stomach, it was aggravated by said blow. The record shows also that the Commission's assistant medical director recommended a denial of petitioner's application, but it appears from his report that he made no personal examination of petitioner and that his recommendation was based entirely upon the written reports made by the specialist employed by the insurance company and by the doctor called in by the Commission.

Counsel for the Commission call attention to that part of the record showing that the insurance company introduced in evidence the records of two previous compensation proceedings instituted by petitioner from which it appears that petitioner was injured twice before during the course of his employment with other construction firms, and received compensation therefor. Just what bearing these other proceedings have on the present case is not made clear, for nowhere is it claimed that petitioner was not

justly entitled to the compensation thereby awarded to him; and surely the fact that he was injured twice before in the course of his employment does not serve as legal grounds for the denial of compensation if he is injured a third time. The first proceeding took place in 1923, and it was therein stipulated that petitioner was injured in the course of his employment, and the only issue raised was as to the nature and extent of the disability, which was determined in petitioner's favor. The second proceeding took place in 1926, and there, too, it was admitted that petitioner was injured in the course of his employment, the only question raised being as to the extent of the injury. True, the second proceeding shows that at that time petitioner complained of pains in the chest following the injury, but these were readily accounted for by the admitted fact that a pile of lumber had fallen on him and fractured his breastbone.

For the reasons above stated we are unable to sustain the Commission's decision denying petitioner all compensation. Therefore the same is annulled, and petitioner's application is remanded for further proceedings in accordance with the views herein expressed. (*Knock* v. *Industrial Acc. Com., supra.*)

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 20, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1932.

Curtis, J., dissented.