[Civ. No. 7033.   First Appellate District, Division Two.—February 26, 1932.]

ALBERT T. HUGHES et al., Respondents, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellants.

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Appellants.

Philip M. Carey, Robert E. Hatch, J. E. Rodgers and A. F. Bray for Respondents.

NOURSE, P. J.—Plaintiffs sued for damages for the death of Taza M. Hughes. The jury returned a verdict for plaintiffs in the sum of $24,500, and from the judgment on, the verdict the defendants appeal upon typewritten transcripts.

The defendant railway company operates a main line railway through Contra Costa County which is crossed at a flag station known as Nichols by a private road running to the plant of the General Chemical Company. On March 12, 1926, at about 3:30 P. M. Mrs. Hughes drove in a Chevrolet sedan over this crossing to the office of the chemical company where she met a deputy registrar of voters and was duly registered. She returned soon after along the same road, and while crossing the tracks of the railway company was struck by a through train and killed. Mrs. Hughes was a school-teacher employed in a public school at Nichols and was thoroughly familiar with this crossing. Leaving the plant of the chemical company the road went over a bridge covering the tracks of the Southern Pacific Railroad Company. Along the top of this bridge a railing was maintained about the height of the middle of the glass on the door of the Chevrolet. Following the bridge in the direction of the defendant railway company's tracks the road reached the level ground at a point 70 feet from the first track. Over this distance the view was unobstructed and approaching trains were visible for a distance of 1,000 feet or more. At the time of the collision the sky was clear. There was no rain, no fog. The roadway was dry. The witness who registered Mrs. Hughes observed her passing over this bridge in her automobile and at the time she reached the peak of the bridge he heard the whistle of the approaching train which he described as the ordinary crossing whistle which was made by the train daily when it approached that crossing. After the deceased had gone beyond the peak of the bridge the same witness heard several sharp blasts of the whistle which he understood to be a sound of danger, and soon thereafter heard the crash of the collision. Two other witnesses observed the deceased after she had passed the bridge. The

fireman upon the approaching train saw her at a point about 75 feet from the crossing to which she was proceeding at a rate of speed of approximately 8 or 10 miles per hour. The witness Leonarduzzi, called by respondents, testified that he stood at a point 100 feet from the crossing and that, "I remember hearing the bell on the train ringing. Then I saw the machine *coming on* and saw the crash." At the time the fireman first observed the deceased the pilot of the engine was about 1,000 feet west of the crossing. The train was traveling at about 45 or 50 miles per hour; a bell weighing 200 pounds was constantly ringing and the crossing whistle was sounded. As the train approached, the deceased continued to near the crossing at the same low rate of speed and without stopping her car at any point of her approach. When she was about 15 feet from the near rail she suddenly increased her speed and attempted to cross in front of the approaching train. At this time the pilot of the engine was about 100 feet from the crossing. The engineer immediately set the brakes and gave several sharp blasts of the whistle. The automobile was struck, however, broadside in the middle of the railroad tracks.

Of the foregoing facts there is no substantial dispute. One disinterested witness testified that when the train was about 250 feet from the crossing he heard the bell ringing, and other witnesses called by the plaintiffs testified that they heard the warning signal of the engineer. There is some suggestion in the brief of respondents that there might be some conflict in the testimony as to the ringing of the bell in that three witnesses called by the plaintiff testified that they did not hear the bell ringing. The conflict is fanciful and not substantial because each of these three witnesses was shown to have been at a point far distant from the approaching train and in the offices of the chemical company engaged either in conversation or the transaction of other business. Thus it was not reasonable to expect that they should have heard the bell ringing. ▪ Where a witness was in no position to have seen or heard, his testimony that he did not see or hear does not raise a conflict with positive testimony of those who were in such a position and who testified that they did see or hear. (10 R. C. L., p. 1011; *Elias* v. *Collins,* 237 Mich. 175 [52 A. L. R. 1118, 211 N. W. 88]; 66 A. L. R. 1518, note.) The point is of

little moment, however, in view of the evidence that the crossing whistle was sounded and the noise of the train was itself a warning of danger even greater than the sounding of the bell.

The case is controlled by the well-settled rule that one who fails to stop, look and listen upon approaching a railroad crossing is guilty of contributory negligence as matter of law. This duty, the Supreme Court said, in *Koster* v. *Southern Pac. Co.*, 207 Cal. 753, 761 [279 Pac. 788], is not excused by the presence of obstructions which interfere with the driver's view or the presence of unusual noises which interfere with his hearing the approaching train. It was there said that the *quantum* of caution that should be observed by persons crossing railroad tracks had been frequently stated as demanding that such person alight from his vehicle and look for approaching danger if he did not have a sufficient view of the situation otherwise. Many cases are cited on pages 762 to 765 'of the report, and it would serve no purpose to repeat those citations here. Following the Koster case the Supreme Court in *Young* v. *Pacific Elec. Ry. Co.*, 208 Cal. 568, 577 [283 Pac. 61, 65], said: "This court has had frequent and recent occasion to define the duty of persons approaching in vehicles railroad crossings similar to that existing in this case and similarly obscured, and in each of these cases this court has uniformly held that the conduct of persons thus approaching such crossings without stopping, looking and listening for approaching trains amounted to contributory negligence, as a matter of law, which would prevent the recovery by themselves, or, in the event of their death, by their personal representatives, in the event of a consequent casualty."

The evidence of the contributory negligence of the deceased is undisputed. Though the respondents urge that her view of the approaching train might have been obscured by the railing upon the bridge and by trees and small houses which were along the line of the defendant's right of way, the positive evidence of their own witnesses is that there was no such obstruction, and the physical facts demonstrate unmistakably that for a distance of at least 70 feet before the tracks were reached the view of the approaching train was wholly unobstructed.

The respondents seek comfort in the decision of the Supreme Court in *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529], involving the question of the effect of the presumption that a person takes ordinary care of his own concerns. On the strength of this decision it is then argued that, because of the presumption, there was a conflict in the evidence relating to the issue of contributory negligence, and, therefore, the verdict of the jury must be sustained. The opinion in the Smellie case was rendered upon an appeal from a motion granting a nonsuit. Here the appeal is from a judgment following a verdict. In ruling upon a motion for a nonsuit all the evidence must be given a construction most favorable to the plaintiff. Where the appeal is from the judgment the appellate court may determine whether there is in fact a conflict in the evidence, and hence whether there is any *substantial competent* evidence supporting the verdict. The presumption relied on is found in section 1963 of the Code of Civil Procedure. Section 1959 of the Code of Civil Procedure defines a presumption as a deduction which the law expressly directs to be made *from particular* facts. Such a presumption, when drawn from facts proved, necessarily takes the character of a conclusion of fact as well as a conclusion of law, and the purpose of the presumption is to relieve the party upon whom the burden of proof rests of proving those particular facts. When the issue is the degree of care which a person has taken of his own concerns, in the absence of proof of any overt act, the law will presume that he took *ordinary* care. Where, however, the facts proved within the meaning of section 1959 of the Code of Civil Procedure show that the acts complained of were done in violation of statute or in violation of an express rule of law the proof of those facts is proof conclusive that the degree of care required under the circumstances was not exercised and hence there is no room for the conclusion of law that ordinary care was taken. To illustrate, when a party is shown to have operated a motor vehicle on the wrong side of the highway, or without lights in the night-time, or while under the influence of intoxicating liquor, the facts proved do not permit the presumption that he was taking ordinary care of his own concerns to overcome the fact that he was acting in violation of express law. Hence

the presumption is controlling on an appeal from the judgment only in the absence of direct proof of the facts of what was actually done. (*Koster* v. *Southern Pac. Co.,* 207 Cal. 753, 766 [279 Pac. 788].) In this respect we have not found any disagreement in the Smellie case from the rule followed in the Koster case. In the Smellie case the evidence was clear that the parties stopped at a railroad crossing to let a train pass. They then started their machine over the crossing and were struck by a train approaching from another direction which had not been seen nor heard. There was no evidence showing whether they looked or listened and hence no fact relating to the *quantum* of care in dispute. The court invoked the presumption of ordinary care which in that particular case became more a conclusion of law than one of fact. If the fact had been that the parties did not stop, look or listen before crossing the railroad track there would have been no proven fact upon which the presumption of section 1963 could have been attached either as evidence of the fact of the exercise of ordinary care or as a conclusion that due care had been exercised under the circumstances. The case here is directly in line with the Koster case inasmuch as the proved and admitted facts are that the deceased did not stop and the settled rule is that there is a duty to stop as well as a duty to look and to listen. When the evidence is undisputed that the view of the deceased was unobstructed so that if she had looked she could have seen the approaching train, that the noise of the train taken with the crossing signal and the ringing of the bell was so great that if she had listened she could have heard, and that if she had stopped at any point within the 70 feet of approach to the tracks she could have discovered the approaching train in time to avoid injury, there is no fact in evidence upon which a presumption could be founded that she was taking ordinary care of her own concerns at the time. On the other hand there is a strong presumption that if she had looked she would have seen and if she had listened she would have heard the approaching train. (*Young* v. *Southern Pac. Co.,* 189 Cal. 746, 754 [210 Pac. 259]; *Cate* v. *Fresno Traction Co.,* 213 Cal. 190 [2 Pac. (2d) 364].) In such a case the weight of the presumption of ordinary care as evidence is precisely

the same as the weight of testimony which is so unreasonable and improbable that the appellate courts will say that it does not constitute a substantial conflict. In other words, though this presumption is evidence, it is no better as evidence than testimony to the same effect given by a witness on the stand. ▮ And, in this respect, the rule is settled that, while a finding or verdict will not be disturbed on appeal if there is a substantial conflict in the evidence, "the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion". (*Field* v. *Shorb,* 99 Cal. 661, 666 [34 Pac. 504]; *Felsenthal* v. *Warring,* 40 Cal. App. 119, 135 [180 Pac. 67, 74]; *White* v. *Greenwood,* 52 Cal. App. 737, 742 [199 Pac. 1095]; *Tobias* v. *Adams,* 201 Cal. 689, 695 [258 Pac. 588]; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39, 43 [190 Pac. 359]; *Waizman* v. *Black,* 101 Cal. App. 610, 614 [281 Pac. 1087].) As we understand the rule of these cases it is this: Before the finding is conclusive on appeal the conflict in the evidence must be substantial and real, and not merely fanciful; it must be of such a character that reasonable minds, viewing it dispassionately, might fairly entertain a difference of opinion upon it.

▮ The respondents urge that the issue of contributory negligence was not properly pleaded and that it cannot be considered on this appeal because the defendants did not confess their own negligence and raise this issue in avoidance. The defendants pleaded that the death of the deceased and the damage to the plaintiffs was caused solely by and resulted from the negligent acts and omissions of the decedent. Though the plea is not as full as is usually employed in cases of this character it nevertheless put the question in issue, and plaintiffs' own testimony conclusively showed a case of contributory negligence and this in itself is sufficient to raise the issue. (*Hoffman* v. *Southern Pac. Co.,* 84 Cal. App. 337, 346 [258 Pac. 397]; *Gundry* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 104 Cal. App. 753, 762 [286 Pac. 718].) ▮ And as a defendant may plead separate and inconsistent defenses, he is not required to confess negligence on his part in order to plead the negligence of plaintiff. (*Hoffman* v. *Southern Pac. Co., supra,* p. 348.)

Because of our conclusion that the judgment must be reversed for the reasons stated it would serve no purpose to discuss the other errors assigned.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 26, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1932.