[Civ. No. 9164.   First Appellate District, Division One.—January 31, 1935.]

KATHLEEN ELLIOTT, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation), Appellant.

Wm. M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Appellant.

Frank B. Thompson for Respondent.

GRAY, J., *pro tem.*—The complaint charged that while respondent was standing on Market Street at its intersection with Montgomery Street, in San Francisco, appellant so negligently operated its street car westerly on Market Street as to cause it to collide with respondent, thereby inflicting upon her personal injuries. The answer denied such negligence and affirmatively alleged her negligence. The jury returned its verdict awarding damages to her. From the judgment entered thereon, appellant appeals upon the ground of the insufficiency of the evidence to justify the verdict. In support thereof it argues (1) that the evidence is insufficient to establish its negligence, (2) that the evidence shows that her negligence was the sole cause of her injuries, and (3) that the evidence discloses her contributory negligence. If either argument is correct the judgment, of course, must be reversed.

The disposition of this appeal, then, requires a review of the evidence. ■ The result of such review is governed by the following rules: This court will not disturb a verdict where there is a conflict of evidence on material points and when there is evidence to support the verdict; but such conflict and such evidence must be real and substantial. (*Driscoll* v. *Market Street Cable Ry. Co.*, 97 Cal. 553 [32 Pac. 591, 33 Am. St. Rep. 203].) ■ Since an appellate court may not invade the province of the jury, its verdict is conclusive if a conflict in the evidence exists, but such conflict must be substantial and real and not fanciful or fictitious, nor a mere pretense; mere conclusions will not serve to meet the

definition of substantial or any evidence as against the positive, direct evidence of a fact. (*Thoreau* v. *Industrial Acc. Com.*, 120 Cal. App. 67 [7 Pac. (2d) 767].) Before the verdict is conclusive on appeal, the conflict must be substantial and real and not merely fanciful; it must be of such a character that reasonable minds, viewing it dispassionately, might fairly entertain a difference of opinion upon it. (*Hughes* v. *Atchison etc. Ry. Co.*, 121 Cal. App. 271 [8 Pac. (2d) 853].)

■ Respondent testified that, intending to board appellant's westbound McAllister Street car, she crossed the intersection of Market and Montgomery Streets, southerly from the northerly curb to a raised concrete safety station, located northerly of the westbound tracks of the Municipal Street Railway; that as she waited upon this station, she saw the street car she intended to take and a Municipal street car stopped at the next easterly intersecting street; that when she saw her car leave this stop, she walked southerly over the Municipal tracks to a yellow line, painted parallel and midway between the tracks of the two railways, and stood there still with her back to the Municipal tracks, unconscious of the approach of any street car thereon, and facing her approaching car, with a small cake box held flat against the front of her body; that, after passing several persons to her left, some part of the side of the car struck some part of her body; and that when the car stopped she was lying under the forward platform in front of the foremost wheels. On direct examination she stated the speed of the car was fifteen to twenty miles per hour, that the car was swaying sideways as it approached and that her body was dragged ten feet. On cross-examination, she admitted that she was a poor judge of either time or distance, that she was dragged three to five feet and that she did not know how much the car swayed, what part of it swayed or where it was when it swayed. The only witness called by respondent stated that she was standing immediately to respondent's left and nearest to the approaching street car; that some part of the side of the car, about five feet back from its front, struck respondent and knocked her under its platform near the wheels; that the car stopped five feet from the point of impact; that it was swaying four or five inches; and that it was half a car's length ahead of the oncoming Municipal street car.

Appellant's witnesses testified as follows: Its motorman stated that the last stop before the accident was made at Second Street, which is one block easterly of Montgomery Street; that the tracks between these streets were smooth and slightly upgrade and the street car did not sway; that the highest speed he attained between these streets was approximately ten miles an hour and that its speed at the time of the accident was about four miles per hour; that he saw people standing between the Municipal and appellant's tracks but not in the path of his oncoming car; that the front of his car passed them without contact; that he did not see the collision; and that his first notice of an accident was when he heard a scream. Its conductor and two passengers each denied the car swayed laterally. Its inspector said that he was walking backwards, signalling the motorman to advance; that he saw people between the tracks of the two railways and clear of the path of the street car; that its front passed them in safety; that he saw respondent standing on the yellow line, holding a box immediately in front of her; that after the front of the car had passed her he noticed her move and saw her knee come in contact with the front step of the car; that the car's speed was four miles an hour, that it did not sway and that after the accident respondent lay immediately under the front step probably a foot and a half from the wheels. An employee of the Municipal Railway testified that he was standing on the elevated safety station collecting fares and observed the approaching street car; that appellant's street car was a car's length ahead of the Municipal street car; that the speed of the former was about four miles per hour and that it was not swaying sideways.

From the foregoing review of the testimony, it is apparent that the specific acts of negligence upon which respondent relies for recovery were the excessive speed and the swaying of the street car. It is true that in her brief she requests affirmance of the judgment upon the authority of *Pevonak* v. *San Francisco*, 206 Cal. 648 [275 Pac. 785], which because of a claimed similarity of facts, she argues is controlling, but neither her complaint nor her evidence bring this case within the facts or reasoning of that decision. In that case the accident occurred between the same pair of tracks but in the next westerly intersection. As here, space

between cars on the two pairs of tracks barely permitted a person of ordinary physique to stand sideways. There also, the plaintiff, with a group of people, crossed the Municipal tracks from a safety station to a position between such tracks and those of the present appellant for the purpose of boarding such appellant's approaching street car. But with these facts, the similarity between the cases ends, and the following different facts form the real basis of that decision: This approaching street car, upon signal from the starter, proceeded without stopping. It was immediately followed, at a rapid rate of speed, by another car of appellant, traveling abreast of a car on the Municipal tracks. Observing that the two cars were going to try to pass simultaneously, the members of the group huddled together, side by side, their shoulders overlapping. When four feet of appellant's car had passed and the front end of the Municipal car was opposite her, the plaintiff was struck violently by the person immediately to her left and thereby hurled against the side of appellant's car. There was no testimony as to which of the group was hit first nor by which car. The Supreme Court, in reversing a directed verdict in favor of the two railways, stated the basis of the decision as follows (p. 651): "In other words, it is our view that it was a question of fact for the jury whether or not these two cars should have simultaneously traversed their respective tracks when a group of ten or twelve persons were crouched together in such a narrow space, there being also ample evidence that the crowd had been placed in this position without fault upon their part, having crossed said Municipal tracks for the purpose of boarding a car which the agent of respondent Market Street Company did not allow to stop and having been prevented from retracing their steps to a place of safety by the oncoming of the two other cars.

"The position of these tracks is at best a menace to life and limb, and to our mind it was certainly a question of fact whether or not the operating companies used ordinary care under the circumstances. The question of whether the front end of the car had or had not passed plaintiff is not controlling, nor is it of controlling importance that it cannot be said whether the injury resulted from a car striking some one of the group of persons or whether from fear or confusion.''

The conflict between respondent's estimate of the car's speed and that made by appellant's witnesses is fanciful, but not real, for her acknowledged inability to judge either time or distance makes her estimate worthless. (*Gackstetter* v. *Market Street Ry. Co.*, 104 Cal. App. 89 [285 Pac. 409]; *Gackstetter* v. *Market Street Ry. Co.*, 130 Cal. App. 316 [20 Pac. (2d) 93].) As to the swaying of the car, the testimony is conflicting and therefore the jury was entitled to accept respondent's version that the car did sway. Respondent merely said the approaching car swayed laterally but she was unable to fix the lateral distance of the sway of the side of the car, the part that swayed or the relative position of the car and her body when it swayed. Her witness stated that the car swayed sideways four or five inches but she likewise could not locate the swaying with reference to respondent or the body of the car. Since some swaying is an inherent and unavoidable characteristic of any moving car, such description of this car's swaying is too vague, indefinite and uncertain to permit the jury to find that its operation with such swaying was negligent. The testimony of respondent's witness and appellant's inspector shows that respondent's knee came in contact with the side of the car, about five feet back from its front. As the side of the car had no projection and five feet of it had passed in safety, the contact of respondent and the car must have been due either to her movement towards the car or the swaying of the car towards her. The car was so constructed that its body, resting upon the trucks alone, could sway laterally and such swaying would increase with its height. The failure, directly or indirectly to fix the distance the side of the car swayed at its elevation, where it struck respondent's knee, made it impossible to say that such swaying was a proximate cause of the collision.

Respondent was familiar with the scene of the accident and the operation of the cars, as she had daily, over a period of six months, boarded and alighted from similar cars at this place on her travel between her residence and place of employment. She was not confused or frightened by the presence of any Municipal car to her rear. She observed the car from its last previous stop to the position of collision and saw that as it approached, it was swaying. Several persons, including her witness, who stood between

the approaching car and her, were not struck by it. Knowing that the car was swaying and having ample opportunity to avoid it by stepping backwards slightly, she was negligent in not removing from the path of the oncoming car and she cannot recover because such negligence proximately contributed to the accident.

The judgment is reversed.

Tyler, P. J., concurred.