[Civ. No. 10524. Second Appellate District, Division One.—May 1, 1936.]

OMER L. SHARP, Appellant, v. A. G. KEATING, Respondent.

James M. Gammon for Appellant.

Emmett A. Tompkins for Respondent.

WHITE, J., *pro tem.*—Plaintiff and appellant, Omer L. Sharp, is a physician, and the defendant and respondent, A. G. Keating, is a stockbroker, and also president of Big Jim

Mines, Inc. It appears that appellant had bought and sold stocks through respondent's office over a period of several years. On December 29, 1933, appellant agreed to purchase from respondent 50,000 shares of Big Jim Mines, Inc., stock, at six cents per share, and paid $1100 on account of the purchase price, receiving the ordinary confirmation from respondent's agent. There is nothing in writing to indicate when the balance of the purchase price was to be paid, appellant claiming that he was to have 90 days within which to pay the full purchase price, and that nothing whatever was said about date of delivery of the stock, while respondent insists that the agreement was that the whole order was to be readjusted at the end of 30 days, and that the oral agreement between the parties with reference to delivery was that the same was to be accomplished at the option of respondent. No further payment was made by appellant on the purchase price of the 50,000 shares of stock, and on March 10, 1934, respondent wrote appellant, canceling the latter's order for the 50,000 shares, and advising appellant that his account had been credited with 18,333 shares of Big Jim Mines, Inc., stock, which represented approximately the number of shares paid for by the $1100 delivered on account by appellant to respondent at the time the original agreement to purchase the 50,000 shares was executed. Appellant subsequently acquiesced in this arrangement, and about May 29th, at appellant's request, respondent wrote him what was denominated a *"résumé* of his (appellant's) account"*, showing that respondent was holding for appellant 26,477 shares of Big Jim Mines, Inc., stock, being made up of the 18,333 shares paid for by the aforesaid $1100, and an additional 8,144 shares due appellant from a stock pool. In the same communication respondent offered to sell appellant an additional 523 shares for $31.38, to make an even 27,000 shares. On June 6, 1934, appellant paid respondent the $31.38, thus making appellant's stock holdings 27,000 shares. About May 29, 1934, there was delivered to appellant the 8,144 shares of pooled stock, leaving a balance of 18,856 shares belonging to appellant in the possession of respondent, after the June 6th payment.

The amended complaint herein presents two causes of action, the first of which sets up the purchase agreement of December 29, 1933, for 50,000 shares of stock, the subsequent

modification of said agreement on May 29, 1934, whereby the appellant, having paid in full the purchase price for 18,856 shares, became entitled to the delivery thereof within a reasonable time thereafter. Plaintiff further averred that notwithstanding numerous demands by him for delivery of the stock, defendant refused to surrender the same to plaintiff, to the latter's damage in the sum of $3,016.96. The second cause of action adopted portions of the first, and in addition thereto charged defendant with conversion of the stock to plaintiff's damage in the aforesaid sum.

Upon trial by the court, sitting without a jury, judgment was rendered in favor of defendant, and plaintiff appeals therefrom.

At the trial appellant contended and testified that respondent agreed to deliver the shares of stock finally agreed upon within a few days and as soon as the same could be transferred, while respondent's testimony was that he specifically stated to appellant that the stock was not to be delivered until after a stockholders' meeting, to be held on or about July 21, 1934, and that the reason for such delay in delivery was that respondent, who was president of the corporation, did not want the stock to be available to appellant for the latter to place the same on the market, thereby reducing the market price at which the company's stock was selling. Respondent also testified that he tendered the stock to appellant on July 23, 1934, two days after the stockholders' meeting, and at all times thereafter was willing to deliver the stock. At the time of trial defendant also made another tender of the stock in question to plaintiff.

The trial court resolved this conflict in favor of defendant by finding that the agreement between the parties was that the stock was not to be delivered until after the stockholders' meeting on July 21, 1934, and by further finding that defendant tendered the stock in question to plaintiff on July 23, 1934. No citation of authority is required for the assertion that reviewing courts will not disturb a judgment where there is a conflict of evidence on material points, and where there is real and substantial evidence to support the trial court's decision. Being of the opinion that reasonable minds, dispassionately viewing the evidence in this case, might fairly entertain a difference of opinion upon it, we must uphold the conclusion of the trial court thereon, because in passing upon

the question before us, we are not to weigh the evidence, but only to consider its legal sufficiency, as distinguished from its probative force, and accept a substantial conflict as conclusive upon us. (*Hughes* v. *Atchison etc. Ry. Co.*, 121 Cal. App. 271 [8 Pac. (2d) 853]; *Thoreau* v. *Industrial Acc. Com.*, 120 Cal. App. 67, 73 [7 Pac. (2d) 767]; *Smith* v. *Royer*, 181 Cal. 165, 172 [183 Pac. 660]; *City of San Diego* v. *Hall*, 180 Cal. 165 [179 Pac. 889].)

Appellant further contends that since the written instrument evidencing the transaction between the parties was silent on the question of delivery, under the law delivery must be made according to the usage and custom among brokers. However, we think the law is that parties, as to a subject-matter concerning which known usages prevail, by implication incorporate them into their agreements, *if nothing is said to the contrary*. (25 Cal. Jur. 420; 6 Cal. Jur. 315; *Robinson* v. *United States*, 13 Wall. (80 U. S.) 363 [20 L. Ed. 653].) In the instant case, the court found, and there was substantial evidence to support such finding, that there was a special contract between the parties as to the time for delivery of the stock, in which case the doctrine of usage and custom was not applicable; and the understanding, contract and agreement thereon between the parties furnished the measure of respondent's duty. (*Luckehe* v. *First Nat. Bank of Marysville*, 193 Cal. 184, 187 [223 Pac. 547].)

Plaintiff assails the action of the trial court in denying the motion for a new trial, but we are of the opinion that such order should not be disturbed on appeal, because the weight of authority seems to be that where, as in this case, such motion is based on affidavits in support thereof, opposed by counter-affidavits fully denying all the material allegations contained therein, the order denying the motion for a new trial will be affirmed on appeal. (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531 [123 Pac. 359, Ann. Cas. 1913D, 908]; *Patterson* v. *Keeney*, 165 Cal. 465 [132 Pac. 1043, Ann. Cas. 1914D, 232].)

No other points raised by appellant require discussion. The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 25, 1936, and an application

by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1936.