[S. F. No. 12503.  In Bank.—November 18, 1927.]

FORD MOTOR COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, WILLIAM SHORTALL et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — PERCENTAGE OF PERMANENT DISABILITY — PREVIOUS INJURY — CONSTRUCTION OF ACT.—Under sections 9 (b) (2) (10) of the Workmen's Compensation Act, computations of the percentage of permanent disability of an employee caused by any particular injury must be made without reference to any previous injury suffered by the employee and without reference to any permanent disability caused by said previous injury; and the matter of making such computation is within the exclusive jurisdiction of the Industrial Accident Commission and the appellate court has no power to disturb such action, provided there was any evidence before the Commission to justify the finding.

[2] ID. — COMPENSATION—EARNINGS.—In determining the meaning of the words "annual earning capacity," as used in section 11 (f) of the Workmen's Compensation Act, reference must be made to the section 9 (b) (2) (7) of said act, wherein it is provided, "consideration being given to the diminished ability of such injured employee to compete in an open labor market"; and reading these sections together, upon receiving a second injury an injured employee's average annual earnings at the time he received such injury is to be fixed at such a sum as will reasonably represent his annual earning capacity as he is forced to compete in an open labor market after sustaining his first injury.

[3] ID. — SECOND INJURY OF EMPLOYEE — EARNINGS—DETERMINATION OF COMPENSATION.—In determining the compensation to be paid an employee after a second injury received by him, where the latter, in pursuance of a general policy of the employer, was

re-employed and paid the same wages after the first injury as were paid before said injury, such wages should not be considered but the compensation should be fixed for the later injury upon the earning capacity of the injured employee in competition in an open labor market at that time.

(2) Workmen's Compensation Acts, C. J., p. 122, n. 40.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission awarding compensation for personal injuries. Award annulled.

The facts are stated in the opinion of the court.

R. P. Wisecarver, and Redman & Alexander for Petitioners.

G. C. Faulkner for Respondent Industrial Accident Commission.

William F. Humphrey and Morgan J. Doyle for Respondent William Shortall.

CURTIS, J.—Proceedings in *certiorari* to review an award of the Industrial Accident Commission in favor of William Shortall, who was employed as a mechanic by the Ford Motor Company. While so employed, and on the twenty-ninth day of July, 1921, he sustained an injury to his back. This injury arose out of and in the course of his employment, and consisted of a fracture of the spine, with a series of sprained ligaments and membranes about the spine at or near its juncture with the sacrum. In proceedings instituted before the Industrial Accident Commission for an award for compensation for the injury thus sustained said Commission found that he was permanently disabled as a result of said injury and fixed the percentage of his disability at eighty and three-fourths per cent. Upon this finding an award against the United States Fidelity and Guaranty Company, the insurer of the Ford Motor Company, was made in favor of William Shortall in the sum of $5,000, payable at the rate of $20.83 per week from the date of the injury, exclusive of the waiting period, for the period of 240 weeks and thereafter the additional sum of $6.55 per week during his lifetime. After sustaining this in-

jury he returned to the employ of the Ford Motor Company wearing a steel jacket to sustain his spine. His main work after his return was passing out tools over the counter. This was light work which he was able to perform in his disabled condition. The Ford Company, following a rule of re-employing its disabled employeees, paid Shortall for these services after his return to its employ the same wages that it had paid him as a mechanic before his injury. On September 16, 1924, and during his employment after his return following the first injury, he sustained a second injury to his spine. This injury was caused by his attempt to move a counter and resulted in again straining his spine at the point of its first injury. Thereupon he filed a second application before the Commission, and upon the hearing thereof the Commission found:

"1. Applicant, William Shortall, on the 16th day of September, 1924, at San Francisco, California, while in the employ of the defendant, Ford Motor Company, at which time the employer was insured against liability under the Workmen's Compensation, Insurance and Safety Act of 1917, by the defendant, General Accident, Fire and Life Assurance Corporation, Ltd., sustained an injury arising out of and in the course of said employment, consisting of a strain of the back. . . .

"3. The employee had, prior to said injury, sustained a strain of the back while in the employ of said defendant, Ford Motor Company, on the 29th day of July, 1921, resulting in permanent disability amounting to 80¾% of total disability, for which, in proceeding numbered 11176 before this Commission, an award was entered against the defendant, United States Fidelity & Guaranty Company. As a combined result of said injuries, the employee now has a permanent disability, . . . amounting to 95¼% total disability, and entitling him to compensation from the defendant, General Accident, Fire and Life Assurance Corporation, Ltd., at the rate of $20.83 per week, for a period of 240 weeks, beginning with the eighth day after said injury of September 16, 1924, and thereafter at the rate of $11.30 per week, during the remainder of the employce's life; amount accrued to January 25, 1927 (122 weeks), exclusive of the waiting period of seven days, is

$2,541.26; payments on account, $280.30; balance due as of said date $2,260.96. The foregoing benefit is based upon the maximum wage permitted by law as a basis for compensation."

This award was against the General Accident, Fire and Life Assurance Corporation, the insurer of the Ford Motor Company at the date of the second injury. The Ford Motor Company and the United States Fidelity and Guaranty Company, the insurer at the time of the first injury, were made parties to the second proceeding, as well as the first, but were relieved of all liability under the second award. After a denial of a petition for a rehearing by the Commission, the Ford Motor Company and the General Accident, Fire and Life Assurance Corporation have by these proceedings brought the record of the Commission to this court for review. Just what standing the Ford Motor Company has in this proceeding is not apparent, as the Commission by its award relieved it of all liability thereunder. This fact is not of material importance, however, as all the questions pertinent to the issues here can be and have been raised by the General Accident, Fire and Life Assurance Corporation, who is a proper party hereto.

Petitioners assail said award upon various grounds, the principal one being that the award is contrary to the provisions of the Workmen's Compensation Act. The proper designation of this act is "Workmen's Compensation, Insurance and Safety Act of 1917" (Laws of 1917, p. 831). We will refer to it herein as the Workmen's Compensation Act. It is contended by petitioners that the Commission found that Shortall as a result of the two injuries suffered a permanent disability amounting to ninety-five and one-fourth per cent of total disability, and that as it had previously found as a result of the first injury, his permanent disability was eighty and three-fourths per cent of total disability, the Commission in effect awarded Shortall compensation based upon a one hundred and seventy-six per cent total disability. Petitioners further contend that Shortall as a result of the second injury only sustained a fourteen and one-half per cent total disability, and that the Commission should have taken this percentage of total disability as a basis and, in connection with the wages he was receiving at the time of sustaining this second injury, made an award of compensa-

tion due him as a result of this second injury. As we understand the Workmen's Compensation Act the Commission was right in computing the percentage of total disability caused by the second injury without reference to any injury previously suffered or any permanent disability caused by the previous injury. We are in doubt, however, as to the correctness of the action of the Commission in taking the wages Shortall was receiving at the time he sustained the second injury as a basis for awarding compensation for the latter injury. The sections of the Workmen's Compensation Act governing this matter are as follows:

Section 9 (b) (2) (7): "In determining the percentage of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market."

Section 9 (b) (2) (10): "The percentage of permanent disability caused by any injury shall be so computed as to cover the permanent disability caused by that particular injury without reference to any injury previously suffered or any permanent disability caused thereby."

Section 11 (f): "The fact that an employee has suffered a previous disability, or receives compensation therefor, shall not preclude him from compensation for a later injury, or his dependents from compensation for death resulting therefrom, but in determining compensation for the later injury, or death resulting therefrom his average annual earnings shall be fixed at such sum as will reasonably represent his annual earning capacity at the time of the later injury."

Section 9 (b) (2) (7), it is apparent, sets forth the matters to be taken into account and considered by the Commission in determining generally the percentage of permanent disability caused by an injury without reference to whether such injury is the first or a subsequent injury. [1] Section 9 (b) (2) (10), on the other hand, contains a direction for computing the percentage of permanent disability caused by an injury after an injury previously suffered. By this provision the Commission is directed to

compute the percentage of permanent disability caused by any particular injury without reference to any injury previously suffered by said employee or without reference to any permanent disability caused by said previous injury. It would be a direct violation of said section of the statute, as construed by this court in *Liptak* v. *Industrial Accident Commission*, 200 Cal. 39 [251 Pac. 635], for the Commission in computing the percentage of permanent disability caused by the second injury to take into consideration any former injury of said employee and to deduct the percentage of disability caused thereby from the disability found to exist in the injured employee after sustaining the second injury. The Commission, therefore, acted in accordance with the requirements of the Workmen's Compensation Act in computing the percentage of permanent disability sustained by reason of the second injury without reference to any former injury. In making this computation the Commission fixed the percentage of permanent disability sustained by Shortall at ninety-five and one-fourth per cent of total disability. This was a matter within the exclusive jurisdiction of the Commission, and this court has no power to disturb such action provided there was any evidence before the Commission to justify such a finding. It is not claimed by the petitioner that the evidence was insufficient if the above construction is given to section 9 (b) (2) (10).

[2] The Commission, however, after fixing the percentage of permanent disability sustained by the employee after receiving the second injury based the amount of compensation he was entitled to receive on account of such injury upon the wages he was receiving at the time of his second injury. That is, the Commission took the amount of wages he was receiving at the time he received the second injury as a basis under section 12 of the act in determining his average annual earnings at that time. The evidence shows that both before and after the first injury the employee was receiving $6.96 per day for six days per week, or $41.76 per week. The Commission on each occasion took the highest average weekly earnings, that is, $31.05, permitted by section 12, in computing the average annual earnings of the employee. The evidence shows without conflict that the Ford Motor Company, the employer, in keeping with a rule adopted by it, had employed the injured

employee after his first injury and was employing him to do light work which he was able to perform in his injured state, and was paying him the same wages he received as a mechanic before he was injured on the first occasion. The Commission, as we have seen, took the wages the injured employee was receiving at the time of his second injury as a basis for determining his compensation for the second injury. Ordinarily the compensation awarded to an injured employee would be computed with reference to the average weekly wages the injured employee was receiving at the time of sustaining an injury within the limitations fixed by section 12, but in our opinion the provisions of section 11 (f) must be taken into consideration by the Commission in fixing the compensation for a second injury. This section prescribes the rule for fixing compensation in such cases. It is there provided that: "The fact that an employee has suffered a previous disability, or receives compensation therefor, shall not preclude him from compensation for a later injury; or his dependents from compensation for death resulting therefrom, but in determining compensation for the later injury, or death resulting therefrom, his average annual earnings shall be fixed at such sum as will reasonably represent his *annual earning capacity* at the time of the later injury." In determining the meaning of the words "annual earning capacity" as used in this section, reference must be made to section 9 (b) (2) (7), wherein it is provided that "consideration being given to the diminished ability of such injured employee to compete in an open labor market." Reading these two sections together, the meaning of section 11 (f) we think is clear. Upon receiving a second injury the injured employee's average annual earnings at the time he received such injury is to be fixed at such a sum as will reasonably represent his annual earning capacity as he is forced to compete in an open labor market after sustaining his first injury. As a rule, the Commission may safely take the amount of wages which the injured employee was receiving at the time of sustaining his second injury as a basis for determining his annual earning capacity at that time. The facts produced before the Commission, however, in this proceeding show that the Commission should not have followed that course in fixing the compensation of the injured

202 Cal.—30

employee herein. [3] The earnings received by Shortall at the time he received the second injury were not based upon his earning capacity in competition in an open labor market, but upon the wages paid him by a generous employer in compliance with its policy to re-employ and pay to its injured employees the same wages after an injury as were paid before said injury. In such a case before the Commission can determine the amount of compensation to which such an injured employee would be entitled, it must first comply with the provisions of section 11 (f) and fix his average annual earnings by the method provided therein. While the Commission in computing the percentage of permanent disability caused by an injury must do so without reference to any previous injury, yet in determining the compensation for a later injury no such restrictions are placed upon the Commission. On the other hand, by section 11 (f) the Commission is expressly directed to fix such compensation for a later injury upon the earning capacity of the injured employee at the time of such injury. After ascertaining his earnings by this process and having determined the percentage of permanent disability in the manner in which we have already indicated, it is then merely a matter of mathematical computation to determine in conformity with other provision of the act the amount of compensation the injured employee is entitled to receive for his second or later injury. Instead of adopting this method, the Commission, after correctly determining the percentage of permanent disability sustained by the injured employee by reason of his second injury, took the amount of wages the employee was receiving at the time as the basis of fixing the compensation for this injury. These wages, as we have already observed, were not paid on the basis of his earning capacity, but in compliance with a policy of his employer to re-employ injured employees at the same wages received by them before the injury. It is obvious that an employee who has sustained an injury causing a percentage of disability amounting to eighty and three-fourths per cent of total disability has not, as a general rule, the same earning capacity after sustaining such an injury as he had before he was so injured. That is what we would expect generally. Of course, if the injured employee had rehabilitated himself after his injury so that his earning capacity after the injury was

equal to that before the injury, then a different question would be presented. For illustration, if any employee was a machinist at the time of his first injury and as such was receiving machinist's wages and compensation had been awarded him for such injury, but after such injury he had made himself proficient as a telegrapher, and as a telegrapher he was able to command a salary equal to the wages he received before his injury, such an employee on receiving a second injury resulting in permanent disability would be entitled to receive compensation based upon the salary he received as a telegrapher within the limits fixed by section 12 of the act, if the Commission should find that his earning capacity at the time of the second injury was equal to the salary received at that time. But we have no such a condition before us in the present proceeding. There is no showing that the injured employee had rehabilitated himself to any extent whatever after the first injury. In fact, all the evidence in the record is against any such inference. It became the duty, therefore, of the Commission before awarding him compensation for his second injury to fix his average annual earnings based upon his annual earning capacity at the time of the second injury and not upon the wages he was then receiving, and upon the sum so fixed, and the percentage of permanent disability determined, compute the compensation due for the later injury. This the Commission failed to do and for this reason the award is illegal.

The award is annulled and the case is remanded for further proceedings before the Commission not inconsistent with this opinion.

Shenk, J., Richards, J., Seawell, J., Langdon, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.