[Civ. No. 9180. First Appellate District, Division One.—May 3, 1934.]

IRVING GAMBERG, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

William Berger for Petitioner.

Everett A. Corten and Arthur I. Townsend for Respondents.

KNIGHT, J.—This is a proceeding to review a decision of the respondent commission denying petitioner's application for compensation for an injury which he claims to have sustained in the course of his employment.

It is conceded by respondents that at the time the application was filed, heard and determined, petitioner was suffering from a left inguinal hernia; but the refusal to compensate him therefor was based upon a finding of the referee that the same was not "caused or exacerbated by injury arising out of and in the course of" his employment.

At the time the injury is alleged to have happened petitioner was and continuously for the preceding nine years had been employed as bookkeeper by Redlick-Newman Company. He was the sole witness before the referee and according to the uncontradicted testimony given by him he sustained the injury about 4:30 o'clock on the afternoon of Saturday, March 11, 1933, while handling a heavy ledger, weighing between forty and forty-five pounds. There were five such ledgers, each containing approximately 1800 separate accounts; and part of petitioner's duties required him to distribute the ledgers among girl accountants in the office for the purpose of having them work on the cards contained therein on which the accounts were entered; and

in order to transport the ledgers back and forth to said accountants it was necessary for petitioner to lift the ledgers and the trays upon which they rested from a small truck, the bed of which stood about a foot and a half above the floor, to a larger truck, the bed of which was three and a half feet above the floor. On this particular occasion, while attempting so to transfer one of the ledgers from one truck to the other, the ledger slipped out of his grip and was about to fall to the floor. He stooped suddenly and caught it, and in doing so felt a sharp pain or kink, ''needle-like'' as he described it, in the region of his hip. For a moment he was unable to straighten up; but shortly afterwards he ''braced up'' and then sat down to his work. Ten or fifteen minutes later he was seized with pains and cramps in both groins, and in the ''lower part of the stomach''. He also ''felt a bulge'' in his groin and pains in his leg. He mentioned the matter to the foreman in the office, but not realizing anything serious had happened to him he remained at his work the rest of the day. Upon reaching home that evening he felt sick. He was unable to eat, and felt ''all jumpy and tired''. He took a hot mustard bath and a physic and went to bed, applying a hot-water bottle to the left inguinal region. He remained in bed all the next day, Sunday. In applying the hot-water bottle he noticed the swelling on the left side. On Monday morning he was still suffering pain, but feeling somewhat better, went to work. He refrained, however, from doing any lifting. After arriving at the company's office he overheard the secretary arranging for medical care for another employee who had turned his ankle, which prompted petitioner to explain to the secretary the injury he received the Saturday previous; whereupon she instructed him to consult the insurance carrier's doctor, which he did during the noon hour, and was examined by Dr. Gilbert. The next day, Tuesday, March 14, 1933, he called at the office of said commission and filed his application for compensation; and at 2:30 of the same day the referee proceeded with the hearing of the application. The insurance carrier, State Compensation Insurance Fund, was represented by its attorney; but petitioner appeared without counsel. He was informed by the referee that he was entitled to a continuance to obtain counsel if he so desired or could proceed at once and they would ''find

out all the facts''. Petitioner stated he had no objections to proceeding, and thereupon he was sworn, examined by the referee and cross-examined by the attorney for the insurance carrier. At the conclusion of his testimony the matter was left ''open five days for filing of report of Dr. Gilbert'', a copy of which was to be sent to petitioner and the matter was then to be submitted for decision. However, following the hearing and on the same day thereof petitioner was examined also by Dr. Holmes, assistant medical director of the insurance carrier; and on March 17, 1933, his written report with the one prepared by Dr. Gilbert, both of which were addressed to the insurance carrier, were filed with the commission; and on March 22, 1933, the referee filed his adverse findings, which on the same day the commission adopted and denied petitioner's application.

The record further shows that on March 15, 1933, the day following the hearing before the referee, and prior to the filing of the written reports of the insurance carrier's doctors, petitioner of his own accord consulted Drs. Eloesser and Rogers, and on March 27, 1933, an operation was performed for the reduction of the hernia. Subsequently, and on April 10, 1933, petitioner filed a petition for a rehearing of his application based mainly on the written report of Dr. Rogers; but a rehearing was denied.

It is well settled, of course, that reviewing courts may not invade the field of the fact-finding body; and consequently where a conflict of evidence exists the findings of the trier of the facts are conclusive. But it is equally well established that the application of the foregoing rule is limited to cases where the conflict is substantial and real, and not fanciful or fictitious (*Thoreau* v. *Industrial Acc. Com.*, 120 Cal. App. 67 [7 Pac. (2d) 1039]; *Burns* v. *Faget Engineering Co.*, 53 Cal. App. 762 [200 Pac. 818]), nor a mere pretense (*Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377]); and in this regard it has been said that mere conclusions will not serve to meet the definition of substantial or any evidence as against positive, direct evidence of a fact (*Barton* v. *McDermott*, 108 Cal. App. 372 [291 Pac. 591]); also that the conclusions of an expert based upon an incorrect or faulty hypothetical case are of no practical value (*North Elk Oil Co.* v. *Industrial Acc. Com.*, 81 Cal. App. 582 [254 Pac. 582]).

Nowhere is it claimed by respondents in the present proceeding that the incident relating to the falling and sudden grasping of the ledger which petitioner testified was the direct cause of the hernia did not happen; and an analysis of the reports of the insurance carrier's doctors shows that neither went so far as to venture the unqualified opinion, as expressed in the referee's findings, that petitioner's acute condition was not caused or exacerbated by the happening thereof. In this regard Dr. Holmes' summary was: "I cannot believe that the so-called incident had any *particular* bearing upon his present condition" (italics ours); and such statement was further qualified by the one preceding it wherein he said: " . . . it must be admitted that the catching of the 35 lb. tray did exert a mild strain upon his muscles". And although Dr. Gilbert in his report stated that in his opinion the hernia already existed, he went on to say: "The sudden effort of last Saturday forced additional intestinal contents into the pre-existing hernia calling it to the patient's attention." Furthermore, it is apparent that the qualified opinions thus expressed by the insurance carrier's doctors as to the improbability of the Saturday incident being the original cause of the hernia are based on the false assumption of certain material facts. For example Dr. Holmes states in his report that petitioner "was lifting a ledger tray off an adding machine truck to place it on a table", and Dr. Gilbert states in his report that petitioner is "a carpenter" and "was moving a steel ledger weighing about forty pounds from one desk to another". It is also apparent that the findings made by Drs. Eloesser and Rogers after having operated on petitioner proved the diagnoses of the insurance carrier's doctors which were founded on external examinations to be unsound and incorrect. That is to say, Drs. Holmes and Gilbert diagnosed the case as a "complete" left hernia; and in this connection Dr. Holmes stated: "The left external inguinal ring is found to be dilated, admitting two fingers with ease. The walls are relaxed and can be stretched without causing more than moderate discomfort" and "with only moderate tenderness". And Dr. Gilbert stated that in his opinion the hernia had been in existence for "a great many years and presents through widely dilated rings"; whereas the operating surgeons found an "incomplete" hernia "probably trau-

matic in origin''; that it was ''very tender on palpation, and the external ring is moderately enlarged, permitting the entrance of index finger''; also that the ''peritoneal covering of the herniation appeared thin and of recent origin.'' Moreover, in clear negation of the theory of a pre-existing hernia, the evidence shows without dispute that during the nine years petitioner was employed by said firm he had never been sick a single day, and that ''a year or two'' before this accident happened he was given a thorough physical examination by a doctor preliminary to taking out group insurance for his employer; and at that time no defects whatever were found in his condition.

For the reasons stated it is our opinion that when the written reports of the insurance carrier's doctors upon which are based the referee's findings and the commission's decision, are measured by the legal rules above set forth, the qualified opinions expressed in said reports do not raise a substantial conflict with the positive, undisputed, unimpeached testimony of petitioner that said incident did bring about the acute condition from which he was suffering when examined by said doctors three days after the incident happened, and which admittedly disabled him from work and required an operation for its correction. Accordingly the referee's finding that said hernia was not caused or exacerbated by an injury arising out of and in the course of said employment and the commission's decision denying petitioner any compensation whatever on that ground are annulled (*Singer* v. *Industrial Acc. Com.*, 105 Cal. App. 374 [287 Pac. 567] ; *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142] ; *Thoreau* v. *Industrial Acc. Com.*, *supra*), and the proceeding is remanded to said commission for further action in accordance with the views herein expressed.

Tyler, P. J., and Cashin, J., concurred.