[Civ. No. 11241.   First Appellate District, Division One.—March 30, 1940.]

E. YOUNG, Petitioner, v. INDUSTRIAL ACCIDENT COM-
    MISSION OF THE STATE OF CALIFORNIA et al.,
    Respondents.

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

Edmund D. Leonard for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondents.

KNIGHT, J.—Petitioner instituted this proceeding in *certiorari* to review and annul an award of the Industrial Accident Commission granting him compensation for injuries resulting from an industrial accident. The award was based on findings by the commission that petitioner's injuries caused permanent disability which the commission rated at 77 per cent; and petitioner claims that the uncontradicted evidence shows that he is unquestionably 100 per cent permanently disabled, and that therefore the commission acted in excess of its jurisdiction in rating him as only 77 per cent permanently disabled.

Petitioner at the time of the accident was 48 years old. He worked as a ranch laborer, having had no formal education, and on June 23, 1934, while employed by Haskins Brothers as a hay stacker, he fell some 20 feet, striking feet first, and sustaining fractures of both ankles and a fracture of the hip, as a result of which he was hospitalized five months and continued to receive treatment thereafter for more than two years. In the hospital he was placed in a cast for the hip and also for the ankles, and traction was used to pull the broken leg back in place. The left ankle healed without any permanent disability, and the hip healed, although with some distortion, restriction of motion, weakness and pain; however, the right ankle, although it healed to some extent, is still badly malformed. Numerous bones were fractured therein, and healed with considerable displacement and irregularity, which causes petitioner to suffer severe and constant pain therein, so much so that he cannot bear any weight on that foot without the greatest difficulty, and he uses a crutch to get about. It is the disability resulting from the condition of this ankle for which petitioner seeks 100 per cent perma-

nent disability rating, claiming that he is totally unable to pursue the work for which he is fitted.

Upon application to the commission a hearing was had and evidence presented, and the commission on March 31, 1937, made its findings and award granting petitioner a permanent disability rating of $37\frac{1}{4}$ per cent, which entitled him to $15.39 a week for 149 weeks, less certain expenses. This finding was based upon the testimony and report of Dr. Victor W. Hart of Yreka. The report was dated January 28, 1937, and stated that petitioner's right leg was half an inch shorter than his left; that there was 30 degrees loss of flexion (bending) at the right hip joint, 10 degrees loss of abduction and 10 degrees loss of adduction in the right hip (movement toward and from the body), and 25 degrees loss of flexion in the right knee joint. As to the right ankle, he found that there was practically complete loss of lateral motion (from left to right), 80 per cent loss of passive dorsal and 70 per cent loss of passive plantar flexion (bending foot up or down at ankle), pain in the right hip and ankle on bending the ankle, some swelling of the foot and ankle, and some atrophy of the calf muscles of that leg. He concluded his report by stating that ''The fixation at his ankle and bony atrophy and lack of motion of the small bones of his right foot make it utterly impossible for him to walk in an even approximate normal fashion or to carry on any occupation of the type for which he is fitted.''

Thereafter and on January 31, 1939 (239 weeks after the injury), petitioner filed a petition to reopen the case under sections 5803, 5804, 5805 of the Labor Code, and in support of his petition presented the report of Dr. James P. Warren of San Francisco. This report was dated January 19, 1939, and described practically the same loss of motion in the right hip, knee and ankle as Dr. Hart's report, and stated that ''With the patient walking barefooted, he did so walking on the outer side of the foot; he was only able to take a few guarded steps without support, it being impossible for him to get around otherwise without the use of his crutch.'' The doctor concluded his report with the statement that petitioner ''has limitation of motion of hip, knee, with nearly a stiff ankle. He is only able to get about slowly, with difficulty, and the use of a crutch. He is totally disabled from carrying on his previous occupation, and in view of the fact that there has been no change according to the patient's statement for

a long period of time, the same I feel is permanent, and now ratable." Also before the commission at this hearing, which was held April 4, 1939, was the report of Dr. Frederick G. Linde, who had examined petitioner at request of the respondent insurance carrier, and Dr. Linde also testified at the hearing. He stated in his report, dated February 17, 1939, that "my examination coincides quite closely with both of these previous examiners (Drs. Hart and Warren) and feel that their conclusions are reasonable and essentially correct. Obviously the hip condition is no source of disability; at least not sufficient to prevent him from undertaking occupational activity. The ankle in its present condition is". He then went on to say that he disagreed with those doctors that nothing further could be done; and he suggested that the pain could be markedly decreased by an operation in which the removal of the cartilage would permit the ankle to become ankylosed (consolidated so as to make a stiff joint). In testifying at the hearing before the commission Dr. Linde stated that "it appeared to me that in his present condition he was entirely incapacitated, that is, regarding weight bearing certainly, by reason of the traumatic arthritis of the right ankle joint resulting from the fractures which he had, or the injury he had had involving the ankle joint"; and again he stated that he thought much of the disability could be removed by surgery on the ankle. Dr. Warren sent a further report dated March 27, 1939, in which he stated he had reviewed Dr. Linde's report and discussed the case with him, and "we both agree that this patient as he is at the present time, is totally permanently disabled", but he did not agree with Dr. Linde as to the advisability of an operation on the ankle for the reason that in his opinion it would offer only a 50-50 chance of improvement, and petitioner was not an especially good surgical risk, because the circulation in the leg was definitely impaired, and he had suffered ulcers of the lower leg. The other medical reports had also noted the scars of these ulcers, which petitioner testified he suffered in 1936. Petitioner stated that he did not think it advisable to attempt the operation, and Dr. W. H. Harrison, the assistant medical director of the commission, after an examination of petitioner, reported that he did not feel petitioner's refusal of surgery·was unreasonable.

On June 30, 1939, the commission filed its order amending the findings and award, and rating petitioner's permanent dis-

ability at 77 per cent, and awarding him $15.39 a week for 240 weeks, and thereafter a life pension of $4.03 a week, less all amounts theretofore paid as disability indemnity, and attorney's fees. (If petitioner were rated as 100 per cent permanently disabled, as he seeks, he would be entitled to $15.39 for 240 weeks, and thereafter to a life pension of $9.48.) In July, 1939, pending a petition for rehearing, petitioner was examined by Dr. R .W. Harbaugh, the medical director of the commission. He found much the same physical changes and loss of function as the other doctors, stating that there was considerable thickening through the ankle joint, no lateral motion of the joint, and petitioner bore his weight on the extreme external margin of the foot, using a crutch "rather agilely"; and he mentioned the considerable pain present; but he expressed no opinion as to the extent of the disability present. On August 29, 1939, the petition for rehearing was denied.

The disability ratings adopted by the commission were admittedly based solely on ratings given in the "Schedule for rating permanent disability", and it appears from the reports of the permanent rating department, which are filed as a supplemental return, and also in the brief filed by respondents as a memorandum to the supplemental return, that the original rating of 37¼ per cent was based on the schedule rating for "complete immobility of ankle joints, both feet", calling for a rating of 32.1 per cent, to which 5 per cent was added for the shortening of the leg; and the final rating of 77 per cent was based on the schedule rating for "failure of hip to unite (false joint) one hip". The respondents take the position that this schedule constituted *prima facie* evidence under section 4660 of the Labor Code, and supports the award made; that "as triers of the fact, the Commission had the undoubted right to adopt either the rating called for by the tables or the opinions of these doctors. Their decision being supported by at least *prima facie* evidence should not be subject to annulment". In support of their position respondents rely upon the rule that the extent of disability occasioned by an injury is rarely, if ever, capable of exact measurement, and the determination of the percentage of disability is therefore left to the sound discretion of the commission, to be exercised in view of all of the circumstances; and its conclusion on this matter is the determination of a question of fact not subject

to review by the courts unless palpably contrary to the undisputed evidence. (27 Cal. Jur., p. 506; *Frankfort General Ins. Co.* v. *Pillsbury,* 173 Cal. 56 [159 Pac. 150]; *Globe Mills* v. *Industrial Acc. Com.,* 64 Cal. App. 307 [221 Pac. 658]; *Ford Motor Co.* v. *Industrial Acc. Com.,* 202 Cal. 459 [261 Pac. 466]; *Hines* v. *Industrial Acc. Com.,* 215 Cal. 177 [8 Pac. (2d) 1021].)

The position so taken by the commission would no doubt be sustainable if the schedule had covered the particular disability involved. But it is obvious that the ratings were not based on the disability here existing, nor was there any rating in the schedule which covered petitioner's disability. He did not have ''complete immobility of ankle joints, both feet'' nor a ''failure of hip to unite (false joint) one hip''. He was suffering from a badly malformed ankle, with many ragged and uneven bone surfaces, which if he placed his weight thereon caused him such severe pain that in order to get about at all he had to use a crutch to relieve the weight. The schedule itself sets out that ''The list of disabilities given is not intended to be complete. Where the injury consists of a combination of losses or a disability not enumerated the case must be referred to this Commission for rating.'' And the section of the Labor Code authorizing the use of the schedule (sec. 4660) provides: ''In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market. The commission may prepare, adopt, and from time to time amend, a schedule for the determination of the percentages of permanent disabilities in accordance with this section. Such schedule shall be available for public inspection, and without formal introduction in evidence shall be *prima facie* evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule.''

It is apparent, therefore, from the above provisions of the Labor Code and the schedule itself, that it was not intended that it should be applied in a case such as this, where it did not even approximately cover the disability involved.

It is well settled that when the jurisdiction of the commission to make any award depends upon the establish-

ment of an ultimate fact, the reviewing court may examine the evidence upon which the finding of the commission to that effect is based. In such a case, to justify the upholding of an award there must be sufficient competent evidence to support every jurisdictional fact essentially involved in the application for compensation. And where such findings have been made without any evidence to support them, the award will, of course, be annulled. (See cases cited in 27 Cal. Jur., p. 576.) In the present case, an examination of the record shows that the commission based its finding that petitioner was 77 per cent permanently disabled upon a schedule, limited by its terms to the injuries specified therein, which does not purport to cover the disability here involved, although the positive, direct, uncontradicted testimony of the three medical witnesses, one of whom was the insurance carrier's own examiner, was that petitioner was 100 per cent permanently disabled from doing the work for which he was fitted. In that situation we are of the opinion that the schedule does not constitute in the present case such a ''real and substantial conflict in the evidence to render the findings of the commission immune to inquiry by this court'' (*Hubbert* v. *Industrial Acc. Com.*, 14 Cal. App. (2d) 171 [58 Pac. (2d) 171]; *Gamberg* v. *Industrial Acc. Com.*, 138 Cal. App. 424 [32 Pac. (2d) 413]; *Thoreau* v. *Industrial Acc. Com.*, 120 Cal. App. 67 [7 Pac. (2d) 767]), nor even *prima facie* evidence in support of the commission's findings; and that therefore such findings are ''palpably contrary to the undisputed evidence''.

For the reasons stated, the award is annulled, and the proceeding remanded for further proceedings not inconsistent with the views herein expressed.

PETERS, P. J., Concurring.—I concur with everything stated in the main opinion.

As that opinion points out, the uncontradicted medical testimony in this case is to the effect that the employee is 100 per cent disabled. The commission seeks to support its 77 per cent rating by reference to a certain ''Schedule for Rating Permanent Disabilities'', and by a supplemental return containing certain confidential reports of the Permanent Disability Rating Department of the commission. On March 17, 1937, this department reported that the rating was 37¼ per cent; on May 7, 1937, it reported no change in its opin-

ion; on May 11, 1939, it reported that the permanent disability rating was 77 per cent; and on July 18, 1939, in an interoffice communication, this department gave as its opinion that the rating should be 91 per cent or 100 per cent. All of these reports described the injury in substantially the same manner, and all purport to be based on ratings contained in the "Schedule for Rating Permanent Disabilities". It is conceded that these reports were not made available to counsel on either side of this case. ▮ At the oral argument it was disclosed that it is the practice of the respondent commission, after a case is closed, to submit the medical evidence to its own rating department, and to receive from that department a confidential report as to the degree of disability of the employee. In the present case, the award was based on the confidential report of May 11, 1939. Such practice cannot be approved. Neither the employee nor the carrier are given an opportunity to cross-examine the expert in order to demonstrate that he applied the wrong schedule to the particular case, or to show, as in the present case, that there is no schedule applying to the particular injury. The award must be based on evidence, and that means evidence legally and properly introduced. The commission, as trier of the fact, has no legal right to predicate its award upon the opinion of its own or any other expert, when such opinion does not appear in the record.

This problem is not a simple one of computation. The fact that the expert of the commission, at different times, has rated this particular injury in three or four different ways, demonstrates this. Obviously, no schedule can apply to every possible injury. No schedule can take into consideration the degree of pain, the ability of the injured man to continue to compete in the labor market, and other possible factors. This is the subject of expert testimony. This testimony should be made part of the record, available to both sides, and the expert should be made available for cross-examination. Confidential, secret opinions should play no part in the making of any award.

Ward, J., concurred.