[Civ. No. 6497.   Third Appellate District.—December 9, 1940.]

PHOENIX INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and LOUIS FONTANA, Respondents.

W. N. Mullen for Petitioner.

Everett A. Corten for Respondents.

PULLEN, P. J.—Petitioner, an insurance carrier, seeks to review a decision on rehearing of the Industrial Accident Commission, wherein it was found that Louis Fontana had sustained an industrial injury which had resulted in a permanent disability amounting to 44½ per cent, entitling the employee to $14.82 a week for 178 weeks.

Petitioner contends the evidence is insufficient to support the finding of permanency of injury; that the percentage of injury did not amount to 44½ per cent, and that the liability for such permanent disability, if any, should have been apportioned between the injury and pre-existing arthritis.

The facts briefly are that Fontana filed an application for adjustment of claim with the Industrial Accident Commission in July, 1939. At the hearing in August, 1939, it appeared that Fontana was 56 years of age, and had worked for his immediate employer for twenty years as a laborer, doing general work.

On December 24, 1937, he, with three other men were loading prunes from a platform into a freight car. This they did by moving the prunes on a four-wheel truck, which when

loaded, weighed about 1400 pounds, across an iron plate which bridged the space between the platform and the car. The accident was caused by the iron plate slipping and falling between the platform and the car, and the tipping truck caught the injured man's foot between the truck and the side of the car. He was taken to a hospital, and the lower leg was placed in a cast. That night his ankle became swollen and the cast was removed, and then for about twenty days his leg was elevated and heat applied, when a cast was again applied. He wore this cast for about six weeks, and it was then removed and soft bandages applied until June, 1939. During this period he did no work, suffered pain in the foot, and was compelled to use a cane.

Several physicians and surgeons have testified before the Commission. Dr. Heggler testified that Fontana called upon him on August 16, 1939, which was over a year and one-half after the injury. He found from his examination and a history of the patient, that about thirty years prior to that time he had suffered an injury to the left knee. The injury for which the patient came for an examination was the injury to the right foot and ankle hereinbefore described. The examining doctor found some atrophy in the right leg and a swelling in the right ankle, with pain and tenderness, and also described in degrees the limitation of motion of the right foot. He also testified as his opinion, that Fontana was then unable to pursue his usual employment, and was totally disabled. He also stated the present injury had aggravated the arthritic condition of the earlier injury to the left knee, and to some extent such pre-existing arteriosclerosis aggravated or prolonged his recovery to a moderate degree. It was the recommendation of Dr. Heggler that the applicant receive a four week's course of treatment of physiotherapy, and if no improvement be had, that a permanent rating be fixed.

On January 6, 1939, Dr. Dawson, who had, about a year prior thereto, examined Fontana, reported that generalized arteriosclerosis and hyperextension had contributed to the prolongation of the period of recovery, and "since recovery is nowhere yet complete after more than one year's treatment, it is unlikely that any quick degree of improvement will be seen in the future." He also recommended light exercise, and stated: "If this *régime* is carried out the patient will accomplish a permanent disability of stiffness and its atten-

dant weakness of the right ankle and foot.'' This doctor also reported in May, 1939, that the applicant would never, in his opinion, be able to do ordinary labor. The referee also saw and examined the injured foot. The former employer of Fontana testified that he was a very fine workman, and that as soon as he was able to work he would reemploy him.

Dr. Harrison, one of the assistant medical directors of the Commission, examined Fontana on January 5, 1940, and testified in effect, as to what had been found by the doctors who had made previous examinations. He testified the condition of the applicant was stationary and ready for rating.

Some four months later the referee asked Dr. Harrison what proportion, in his opinion, of the present disability of Fontana was due to the influence of a pre-existing arthritis unaffected by the injury, and what proportion of the disability was due to the acceleration of the pre-existing arthritis by the last injury. In reply the doctor stated he believed the entire disability at that time was due to exacerbation of the previous arthritis. A Dr. Fisher, on February 24, 1940, stated that in his opinion the responsibility for the present condition was 50 per cent to injury and 50 per cent to arthritis.

From the foregoing there is ample evidence to support a finding of permanency of condition. Two years and a half intervened between the accident and the last examinations of the doctors, and one doctor at least stated positively, and others inferentially, that the condition of the applicant was stationary. There is nothing to indicate the applicant was exaggerating his symptoms nor his inability to get about.

The matter of computing the degree of disability suffered by an employee is within the exclusive jurisdiction of the Industrial Accident Commission, and a reviewing court has no power to disturb such action providing there was any evidence before the Commission to justify such a finding. (*Ford Motor Co.* v. *Industrial Acc. Com.*, 202 Cal. 459 [261 Pac. 466] ; *Hines* v. *Industrial Acc. Com.*, 215 Cal. 177 [8 Pac. (2d) 1021].) We are convinced there was here ample evidence upon which to base a finding of a 44½ per cent disability.

As to the contention of petitioner that an apportionment should have been made between the injury and a pre-existing condition or disease, we have a man 56 years of age, who had for twenty years engaged in common labor.

So industrious and efficient was he that his employer was ready to reemploy him as soon as he could go back to work. Prior to the accident in question he had never suffered from arthritis nor been compelled to take time off, and it was the opinion of certain of the doctors, and a fact adopted by the Commission, that the latter injury was an agency which produced the disability.

In *Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal. (2d) 615 [52 Pac. (2d) 215], the court states that general aggravation of a pre-existing disease is an injury in the occupation causing the same. ▪ If there was a pre-existing arthritic condition, the matter of determining the percentage of disability to be apportioned to the industrial injury is a matter within the sound discretion of the Commission.

We find no error in the findings and award of the Commission. The award is affirmed.

Thompson, J., and Tuttle, J., concurred.

A petition by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1941.